IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BERNARD MILLER, #176931,     )
     )
    Plaintiff,     )
     )
v.     )   Case No.: 2:17-cv-201-ECM-WC
     )   [wo]
JEFFERSON DUNN, *et al.*,     )
     )
    Defendants.     )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint filed by Bernard Miller, an indigent state inmate, challenging conditions at Ventress Correctional Facility. Doc. 7, p. 2.  Miller names as defendants Jefferson S. Dunn, the Commissioner of the Alabama Department of Corrections, Karla Jones and Eric Evans, Correctional Wardens at Ventress, and Kenneth Drake, Pamela Harris, Patricia Myers, Bradley Walker, Elijah Rouse, John Pryor, Josiah Haggins, Jesse Stanford and Willie Stallworth, Correctional Officers of various rank at Ventress.

In the amended complaint, Miller asserts that on July 28, 2016, he was attacked by two gang member inmates.  His claims against the defendants arise from this incident. Specifically, he complains that Commissioner Dunn is liable for general overcrowding,

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

understaffing and failure of the ADOC management and staff to prevent gang related behavior, which resulted in his July 28, 2016, assault and violated his Eighth Amendment rights.  He also complains that Warden Jones knew of the dangerous conditions at Ventress and failed to respond to his Inmate Request Slips requesting transfer to a different dormitory.  He further alleges that Defendants Jones, Evans, Drake, Harris, Walker, Rouse, Myers, Haggins and Stanford failed to protect him from dangerous activities.  Miller claims that the defendants were part of a conspiracy to cover up his assault through the disciplinary process when they found him guilty and that this violated his First Amendment Rights. (Doc. 7, pp. 23, 26).  Lastly, Miller claims that Stallworth knowingly placed him in danger by assigning him to a dorm he claims to have been a known gang dorm.  He seeks monetary, injunctive and declaratory relief.  Doc. 7, p. 4.

The defendants filed a special report and a supplemental special report and relevant evidentiary materials in support of their reports, including affidavits, prison documents and medical records, addressing the failure to protect claim presented by Miller.  Docs. 17 and 26. In these documents, the defendants deny they acted with deliberate indifference to Miller's safety.

After reviewing the special reports filed by the defendants, the court issued an order on September 21, 2017 directing Miller to file a response to the defendants' reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  Doc. 28, p. 2.  The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such**

2

**action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report [and supplement thereto] and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 28, p. 3. Miller filed a sworn response to this order on November 1, 2017. Doc. 34.

Pursuant to the directives of the September 21, 2017 order, the court now treats the defendants' special report and supplement thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence

of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers

to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), Fed. R. Civ. P. 56(e). "A mere 'scintilla' of

evidence supporting the supporting party's position will not suffice[.]" *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . .  Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it

is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Miller has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III.  ABSOLUTE IMMUNITY

Miller seeks monetary damages from the defendants in their official capacities for which they are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless

the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849.   "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him in his official capacity.  *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Comty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).  Thus, the Court will hereafter address Miller's claims for injunctive relief against the defendants in their official capacities and his claims for monetary relief against the defendants in their individual capacities.

## IV.  FACTS

Miller alleges upon his arrival at Ventress Correctional Facility on March 21, 2016, that he was assigned to Dormitory F4, which is a "known gang member living quarters."

Doc. 7, p. 12.  He claims that because he is not a gang member his living conditions have been "dangerous and unsafe."  Doc. 7, p. 13.  He claims that Defendant Correctional Officer Stallworth intentionally assigned him to this dorm in violation of his Constitutional rights. Doc. 7, p. 27.  He states that he requested reassignment from this dorm by sending Inmate Request Slips to defendant Warden Jones, but she failed to respond and failed to implement policy changes to deal with "the ongoing violence and serious criminal activities" in Dorm F4.  Doc. 7, p. 13.  He also claims that on multiple occasions he told Warden Jones that he "was in fear of his own safety in such conditions."  *Id.* Miller further claims that Commissioner Dunn is responsible for overcrowding and understaffing at Ventress and for failing to implement a policy giving wardens the "ability to transfer and disband known gang members from congregating as a unit within the prisons" – all of which caused his assault on July 28, 2016.  Doc. 7, pp. 11-12.

Miller also alleges that on July 28, 2016, he was taking a shower in dormitory F4, when "two known gang members only known to the plaintiff as 'Nathan' and 'Buck' entered the shower area where plaintiff was showering" and  attacked him and beat him "all about his face [and] body."  Doc. 7, p. 14.  After another inmate broke up the beating, he left the shower area to find a correctional officer.  When he could not find a correctional officer in the living area, his two attackers began chasing him.  They caught up to him at the entrance to the dorm where the control cubicle is located and beat him, "slamming plaintiff's head into the steel door frame."  *Id.*   Miller claims that the control cube officer, whom he does not name, calling him John Doe, "only passively stood in the window of the

control cube and watched the assault upon the plaintiff."  Doc. 7, p. 15.  Miller also claims that Defendant Correctional Officers Haggins and Stanford were assigned to his dormitory as "security rovers," but were "nowhere present in the dormitory when the assaults took place."  Doc. 7, p. 21.

Miller went to the infirmary where he was examined and reported that "he fell getting out of shower."  Doc. 26-5, pp. 8, 13.[2]  He then was transported to Troy Regional Medical Center, where the 4 ½ inch long and one-inch wide wound was stapled.  Doc. 26-5, pp. 3, 7, 11.  After treatment, Miller was returned to dormitory F4.  He claims that when he was returned to dormitory F4 one of his attackers had been segregated to Dormitory B1, but that his other attacker remained in his dorm.  Miller did not complain to correctional officers about this.  Doc. 7, p. 15.  He claims that later he was made to sign a living agreement with his attacker who remained in his dorm.  *Id.*  He alleges no additional violent acts against him.

In August 2016, Miller received a disciplinary from Defendant Correctional Officer Rouse for the July 28, 2016 incident.  Miller claims that the disciplinary report against him was issued by the defendants "to coverup the true nature of the assault and to attempt to remove their liability in the conditions of confinement that fomented the assault upon the plaintiff."  Doc. 7, p. 16.  Further, he claims that Defendant Correctional Officer Pryor, who was the hearing officer at his administrative disciplinary hearing, found him guilty

---

[2] Later prison infirmary progress notes reflect that this wound resulted from an "attack" on Miller.  Doc. 26-5, p. 4.

without evidence in order to cover-up his claims of assault.  Doc. 7, p. 26.  Also, he claims

that Defendant Correctional Officer Myers failed to investigate the gang member assault

on him as part of the conspiracy to cover-up his claims of assault.  Doc. 7, p. 23.

Additionally, Miller claims that the defendants violated his First Amendment rights when

he received a disciplinary for the July 28, 2016, assault.  Doc. 7, p. 26.  The defendants

adamantly deny these claims.  All of Miller's claims arise from the July 28, 2016, assault.

The Court will first address this claim that the defendants, albeit for different reasons, acted

with deliberate indifference toward his safety.

## V.  DISCUSSION[3]

### A.  Deliberate Indifference -- Generally

"A prison official's duty under the Eighth Amendment is to ensure reasonable

safety, a standard that incorporates due regard for prison officials' unenviable task of

keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*,

511 U.S. 825, 844–45 (1994) (internal quotations and citations omitted).  Officials

responsible for prison inmates may be held liable under the Eighth Amendment for acting

---

[3]In accordance with well-settled law, the court limits its review to the allegations set forth in the complaint and amendment. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909–10 (11th Cir. 2012) (holding that a plaintiff may not amend his complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (noting that district court properly refused to address a new theory of liability raised during summary judgment because the plaintiff had not amended the complaint with respect to the theory and holding that such a claim was not properly before the court on appeal).

with "deliberate indifference" to an inmate's safety when the official knows the inmate

faces "a substantial risk of serious harm" and with this knowledge disregards the risk by

failing to take reasonable measures to abate it.  *Id*. at 828.  A constitutional violation occurs

only "when a substantial risk of serious harm, of which the official is subjectively aware,

exists and the official does not respond reasonably to the risk."  *Cottone v. Jean*, 326 F.3d

1352, 1358 (11th Cir. 2003).  "It is not, however, every injury suffered by one prisoner at

the hands of another that translates into constitutional liability for prison officials

responsible for the victim's safety."  *Farmer*, 511 at 834.  "Within [a prison's] volatile

'community,' prison administrators are to take all necessary steps to ensure the safety of .

. . the prison staff and administrative personnel. . . .  They are [also] under an obligation to

take reasonable measures to guarantee the safety of the inmates themselves."  *Hudson v.

Palmer*, 468 U.S. 517, 526–27 (1984).

The Eleventh Circuit, however, has consistently "stress[ed] that a prison custodian

is not the guarantor of a prisoner's safety."  *Purcell ex rel. Estate of Morgan v. Toombs

County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (internal quotation marks and citation

omitted).  The duty to protect inmates from one another is not absolute "because the Eighth

Amendment addresses only punishment.  Whether an injury inflicted by fellow prisoners .

. . is punishment depends on the mental state of those who cause or fail to prevent it.  The

requisite mental state for prison officials is intent, or its functional equivalent, described as

deliberate indifference[.]"  *King v. Fairman*, 997 F.2d 259, 261 (7th Cir. 1993) (internal

quotation marks and citations omitted).  "Only '[a] prison official's deliberate indifference

to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'"

*Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh v. Butler Cnty.,*

*Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544 (2007).  The Eleventh Circuit has consistently held that "to state

a § 1983 cause of action against prison officials based on a constitutional deprivation

resulting from cruel and unusual punishment, there must be at least some allegation of a

conscious or callous indifference to a prisoner's rights, thus raising the [mere] tort to a

constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting

*Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981); *Zatler v. Wainwright*,

802 F.2d 397, 400  (11th Cir. 1986).

　　　The law requires establishment of both objective and subjective elements to

demonstrate an Eighth Amendment violation.  *Caldwell v. Warden, FCI Talladega*, 748

F.3d 1090, 1099 (11th Cir. 2014).  With respect to the requisite objective elements of a

deliberate indifference claim, an inmate must first show "an objectively substantial risk of

serious harm . . . exist[ed].  Second, once it is established that the official is aware of this

substantial risk, the official must react to this risk in an objectively unreasonable manner."

*Marsh*, 268 F.3d at 1028–29.  As to the subjective elements, "the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference. . . .  The Eighth Amendment does not

outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  . . .

[A]n official's failure to alleviate a significant risk that he should have perceived but did

not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'"" *Farmer*, 511 U.S. at 834–38, 114 S.Ct. at 1977–80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991). . . .  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each individual Defendant must be judged separately and on the basis of what that person knew at the time of the incident."  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  A correctional official must be aware of a sufficiently serious threat to an inmate's safety before the Eighth Amendment "imposes a duty to provide reasonable protection.  Merely negligent failure to protect an inmate from attack does not justify liability under section

1983[.] . . .  The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted); *King*, 997 F.3d at 261 ("To sustain his constitutional claim, the inmate must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.") (internal quotation marks omitted).

Consequently, to survive the properly supported motion for summary judgment filed by the defendants, Miller must first demonstrate an objectively substantial risk of serious harm existed to him prior to the attack on July 28, 2016 and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), *citing Caldwell*, 748 F.3d at 1100.  If he establishes these objective elements, must then satisfy the subjective component.  To do so, Miller "must [show] that the defendant[s] subjectively knew that [Miller] faced a substantial risk of serious harm from [his inmate attacker].  The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm.  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "***particular threat or fear felt by [the] [p]laintiff***."  *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003)

(emphasis added).   Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id.* at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005). (Emphasis in original).

## B.  Failure to Protect

Miller alleges the defendants acted with deliberate indifference to his safety regarding an assault committed against him by two "known gang member" inmates, "Nathan" and "Buck", which occurred first, while he was in the shower and again, while he was attempting to flee them through the control cubicle.   Because the Eighth Amendment requires that "[e]ach individual Defendant must be judged separately and on the basis of what that person knows" *Burnette,* 533 F.3d at 1331, the Court will examine the plaintiff's specific allegations against individual defendants.

### 1.  Claims against Commissioner Dunn and Wardens Jones and Evans

To the extent that Miller claims Defendants Commissioner Dunn and Wardens Jones and Evans are liable to him for failing to protect him from the July 28, 2016, assault by Nathan and Buck, he must demonstrate that Dunn, Jones and Evans were aware of a particular threat to plaintiff or fear by plaintiff that he would be attacked by these two inmates. *See Johnston,* 135 F. App'x at 377; *Rutledge v. State,* 2016 WL 11475123 *6-7 (N.D. Ala. 2016) (Finding no Eighth Amendment violation where plaintiff failed to show "Dunn knew who would attack him" even in the face of allegations that plaintiff's assault by gang members was caused by "chronic overcrowding and understaffing [leading] to conditions in which gangs [were] prevalent" at plaintiff's place of incarceration.)  Miller

has plead no facts from which this Court could infer these defendants had any knowledge of this pending attack on him by "Nathan" and "Buck".  Indeed, Commissioner Dunn states "I have no personal knowledge of the matters alleged in this Complaint."  Doc. 17-1, p.1.  Further, Warden Jones states with respect to Miller's claim that he informed her about excessive and unchecked gang violence on non-gang members that she "reviewed inmate Miller's file to see if there were any request slips or letters to me addressing gang activity in Dormitory F and did not locate any documents."  Doc. 26-1, p.1.  Also, Warden Jones testified that "I do not recall, inmate Miller stating he feared for his safety. Doc. 17-2, p. 3.  Finally, Warden Evans states "I do not know what inmate Miller is talking about in regards to an attack against him."  Doc. 17-3, p. 1.  Moreover, Miller does not allege that "Nathan" and "Buck" "had previously attacked anyone else or had previously threatened him, or any other basis on which the defendants could have been subjectively aware of danger to the plaintiff."  *Id.* at 7.  Neither does Miller claim that he ever complained or expressed concern to any of these Defendants about any possible assault on him by "Nathan" and "Buck".

Miller also asserts that the assault occurred, in part, because of Defendant Commissioner Dunn and Defendant Warden Jones' failure "by policy, custom, or procedure" to balance "the ratio of gang member inmates to non-gang member inmates" in his dormitory assignment.  Doc. 7, p. 14.  These claims against Defendants Dunn and Jones also fail because plaintiff has failed to establish facts from which this Court could find supervisory liability.  *See Rutledge,* 2016 WL 11475123 at *7–8.

Indeed, to establish supervisory liability in a § 1983 claim, the plaintiff must allege that either "the supervisor personally participated in the alleged unconstitutional conduct or that a causal connection exists between the actions of the supervising official and the alleged constitutional deprivation." *Id.* (citing *Harrison v. Culliver,* 746 F. 3d 1288, 1298 (11th Cir. 2014)).   Miller does not allege that Defendants Dunn and Jones personally participated in the events leading up to and constituting the assault.   Thus, the Court will consider whether the causal connection for supervisory liability exists.

To establish the causal connection, Miller must demonstrate either

"(1) a history of widespread abuse put the supervisor on notice of the need to correct the alleged deprivation and he fails to do so; (2) when the supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so."

*Id.* at 7 (citing *Douglas v. Yates,* 535 F. 3d 1316, 1322 (11th Cir. 2008)).

Miller claims that Defendants Dunn, Jones and Evans, through "policy, custom or procedure" have created a condition in his dorm at Ventress which results in unsafe conditions to him due to gang presence.   Based upon this claim and a careful review of Miller's complaint and his other pleadings, the Court concludes that Miller fails to plead a "history of widespread abuse."  *Id.* at 8 (citing *Harrison,* 746 F.3d at 1298) (Allegations of "isolated occurrences" insufficient to establish deliberate indifference against supervisory defendants.).   Indeed, Miller fails to plead any facts of other specific assaults resulting from gang violence in his dorm at Ventress.   Further, the Court concludes there are no facts which could support an inference that Defendants Dunn, Jones and Evans "directed" or

"knew" of any unlawful conduct on behalf of their subordinates. *Id.* at 7.  Rather, Defendant Dunn states that he does "not handle day-to-day operations at Ventress . . . and [never saw] a grievance from the plaintiff regarding this subject matter." Doc. 17-1, p. 1.  Further, Defendant Jones states that she does "not recall inmate Miller stating that he feared for his safety."  Doc. 17-2, p. 3.  She further explains that "[w]hen an inmate reports he fears for his safety, a security supervisor meets with the inmate and advised the inmate to submit a statement and the Enemy Validation Committee will review the claim and make a determination of validity." *Id.*  Finally, Warden Evans states "I do not know what inmate Miller is talking about in regards to an attack against him or how it relates to his confinement."  Doc. 17-3, p. 1.  Accordingly, the Court concludes that Miller's allegations fail to demonstrate facts which could result in vicarious liability under prongs (1) and (3), above.

The Court will now address prong (2); that is -- whether Miller's allegations that the Ventress "custom or policy" of failing to balance gang inmate population in Dorm F has resulted in a violation of his Eighth Amendment rights.  *Rutledge,* 2016 WL 11475123 at *7.  With respect to the policy of placing newly received inmates, Defendant Jones explains that "Dorm E, F & H are designated general population and generally newly received inmates are assigned to any open bed within general population."  Doc. 17-2, p. 2.  This policy contradicts Miller's claim that an imbalanced gang policy existed at Ventress. Further, Defendant Correctional Officer Stallworth, who Miller claims intentionally assigned him to a known gang dorm, states "after returning from court, [Miller] was

assigned to a housing unit where there was available bed space.  I do no recall Miller ever stating that he could not move to the assigned housing unit because of known gang members.  There are known gang members in all housing units at Ventress."  Doc. 17-11, pp. 4–5.  Further, with respect to Miller's claims of defendants' failure to prevent gang related behavior, Warden Jones states "[i]n my review of all incident reports, I pay attention to suspects and try to ensure suspects with multiple offenses are not housed with known gang affiliation . . . trying to separate known gang members.  Doc. 26-1, p. 2.  This evidence also contracts Miller's claims of an imbalanced custom or procedure at Ventress regarding housing of gang members.   However, assuming without deciding that Miller has established the existence of such a policy, custom or procedure which resulted in the July 28, 2016, assault against him, the Court will turn its attention to whether he can establish deliberate indifference on the part of subordinate correctional officer defendants.

### 2.   Claims against Subordinate Correctional Officers

Miller brings claims against Defendant Correctional Officers Drake, Harris, Myers, Walker, Rouse, Pryor, Haggins, Stanford, and Stallworth. Miller alleges that on July 28, 2016, he was assaulted by "Nathan" and "Buck" when they entered the shower area where plaintiff was showering" and attacked him and beat him "all about his face [and] body."  Doc. 7, p. 14.  After another inmate broke up the beating, he left the shower area to find a correctional officer.  When he could not find a correctional officer in the living area, his two attackers began chasing him.  They caught up to him at the entrance to the dorm where the control cubicle is located and beat him a second time, "slamming plaintiff's head into

the steel door frame." *Id.*   Miller claims that the control cube officer, whom he did not name in the Complaint, calling him John Doe, "only passively stood in the window of the control cube and watched the assault upon the plaintiff."  Doc. 7, p. 15.  Miller also claims that Defendant Correctional Officers Haggins, and Stanford were assigned to his dormitory as "security rovers," but were "nowhere present in the dormitory when the assaults took place."  Doc. 7, pp. 20–21.

Correctional Officer Josiah Haggins, however, testified by affidavit that "I was assigned Cubicle Officer in Dorm F at the time of the allegation.  I did not see an attack on inmate Bernard Miller, #176933.  Inmate Bernard Miller was observed bleeding as he was walking out of the dorm, so I radioed Lieutenant Elijah Rouse to report to the yard to see about inmate Miller."  Doc. 26-3, p.1.  Miller further alleges that he "attempted to get the Control Cube officer's attention by banging on the door and screaming for help.  As the plaintiff was trying to exit through the doorway that remained locked, one of the inmates smashed his head into the steel door frame and caused disfiguring injury to the plaintiff's forehead.  The plaintiff was then knocked unto the floor and was kicked in the head by two inmates.  As the plaintiff lost consciousness, he looked up at the Control Cube Window and saw the Control Cube Officer watching the assault, passively.  When the plaintiff regained his consciousness . . . Haggins and Stanford was standing over him asking the plaintiff if he was okay."  Doc. 7, p. 21.

In spite of these specific allegations concerning the assault, Miller has offered no evidence that the subordinate correctional defendants were aware of a strong likelihood

that he would be assaulted on July 28, 2016, by "Nathan" and "Buck". Indeed, Miller does not allege and the record is devoid of evidence that the subordinate correctional defendants had knowledge of a credible threat to Miller at the time of the challenged attack from which the defendants could infer that a substantial risk of imminent harm existed to Miller at the time the assault occurred. In sum, there is no evidence before the Court that the defendants had knowledge of any impending risk of serious harm posed by "Nathan" and "Buck" immediately prior to Miller's attacks. *See Johnston,* 135 F. App'x at 377.

Further, Miller has failed to present any evidence showing "Nathan" and "Buck" posed "an objectively substantial serious risk of harm" to him prior to the July assault, a requisite element for establishment of deliberate indifference. *Marsh*, 268 F.3d at 1028–29, *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Furthermore, even if Miller had satisfied the objective component, his deliberate indifference to safety claim nevertheless fails as the record is devoid of evidence that the defendants were subjectively aware of a substantial risk of serious harm to Miller posed by "Nathan" and "Buck" at the time of the July assault. *Johnson*, 568 F. App'x at 722 (holding complaint properly dismissed because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [the inmate-attacker]."); *Chatham v. Adcock*, 334 F. App'x 281, 293–94 (11th Cir. 2009) (holding that where Plaintiff did "not identif[y] any specific 'serious threat' from [inmate attacker]" or report any such threat to the defendants, mere "fact that [attacker] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the

subjective awareness requirement.'"); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (concluding that "the district court did not err by dismissing [Plaintiff's] failure-to-protect charge for failure to state a claim.  While [Plaintiff] alleged he requested protection from certain inmates and that the defendants knew about his request for protection from his original cellmate . . ., he did not allege that the defendants had notice that he was in danger from . . . the inmate who attacked him.  Simply put, the allegations of [Plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack. . . .   Put another way, because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [the inmate who actually attacked him] and failed to take protective measures, his claim fails."); *Johnston*, 135 F. App'x at 377 (holding that defendants were entitled to summary judgment because plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [the inmate who attacked him]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any [specific] fear [he] felt [from this particular inmate]."); *see also McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because Plaintiff merely advised he "had problems" with fellow inmate and was generally "in fear for [his] life.").  In light of the foregoing, summary judgment is due to be granted in favor of the subordinate correctional defendants

and the supervisory correctional defendants on the claim alleging they acted with deliberate indifference to Miller's safety in preventing his July assault.

### C. Disciplinary Process --Conspiracy Claims

In August 2016, Miller received a disciplinary from Defendant Correctional Officer Rouse for the July 28, 2016, incident. Miller claims that the disciplinary report against him was issued by the defendants "to coverup the true nature of the assault and to attempt to remove their liability in the conditions of confinement that fomented the assault upon the plaintiff." Doc. 7, p. 16. Further, he claims that Defendant Correctional Officer Pryor, who was the hearing officer at his administrative disciplinary hearing, found him guilty without evidence in order to cover-up his claims of assault. Doc. 7, p. 26. Also, he claims that Defendant Correctional Officer Myers failed to investigate the gang member assault on him as part of the conspiracy to cover-up his claims of assault. Doc. 7, p. 23. Additionally, Miller claims that the defendants violated his First Amendment rights when he received a disciplinary for the July 28, 2016, assault. Doc. 7, p. 26. The defendants adamantly deny these claims.

Miller claims that the defendants were part of a conspiracy to cover up his assault through the disciplinary process when they found him guilty and that his some how violated his First Amendment Rights. To state a claim under the First Amendment, a plaintiff must allege that he engaged in speech or an act which was constitutionally protected. *Pittman v. Tucker,* 213 F. App'x. 867, 879 (11th Cir. 2007). The Court has carefully reviewed Miller's Complaint and his other filings and finds no allegations that Miller engaged in any

speech or an act over which he claims the protections of the First Amendment.  Rather, his claim is based upon an alleged conspiracy of the defendants to cover up what actually happened on July 28, 2016, when he was assaulted.  The First Amendment has no application in this instance.  Furthermore, because Miller fails to allege "an underlying actual denial of [his] constitutional rights," his conspiracy claim fails as a matter of law. *See GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F. 3d 1359, 1370 (11th Cir. 1998), *rev'd on other grounds, see Randall v. Scott,* 610 F. 3d 707, 709 (11th Cir. 2010). Accordingly, the Court concludes summary judgment is due to be granted in favor of the defendants on Miller's conspiracy claim.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  Costs be taxed against the plaintiff.

On or before **March 13, 2020**, the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a

party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this the 28th day of February, 2020.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE